UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALEXANDRA GARCIA MONTERO,<br>Defendant. | C.A. No. 18-cr-22-JJM-LDA |

## ORDER

Alexandra Garcia Montero files her petition for post-conviction relief after having plead guilty to a drug charge. She claims ineffective assistance of counsel. Finding no basis for granting the extraordinary relief, the Court DENIES her Motion to Vacate. ECF No. 15.

## I.    RELEVANT FACTS

The Government indicted Ms. Garcia-Montero along with eight others allegedly involved in the so-called Valdez drug trafficking organization. C.A. No. 17-cr-37-JJM-LDA. Count I, the only count to apply to Ms. Garcia-Montero, alleged that she knowingly conspired with others to distribute, and possessed with intent to distribute, heroin, fentanyl, cocaine base, and cocaine.

Eight months later after extensive discovery and plea negotiations, the Government filed a one-count Information against Ms. Garcia-Montero alleging that she conspired to distribute and to possess with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and § 846. It carried a maximum period of

imprisonment of 40 years and a minimum mandatory of 5 years. The parties filed a Plea Agreement to this single count Information at the same time. ECF No. 2.

The Plea Agreement called for Ms. Garcia-Montero to plead guilty to one count of conspiracy to distribute or possess with intent to deliver 100 grams or more of heroin. ECF No. 2 at 1. In exchange, the Government would dismiss similar violations involving fentanyl, cocaine base, and cocaine. Furthermore, the Government would agree not to charge Ms. Garcia-Montero with an "enhanced sentence under 21 U.S.C. § 851 which would require the court to impose a 10-year minimum mandatory term of imprisonment." *Id.* at 4.

The Court conducted a change of plea hearing. ECF No. 19. At that hearing, Ms. Garcia-Montero testified under oath that she voluntarily signed the Plea Agreement,[1] that she was fully satisfied with her attorney's representation, that she understood there was a 5-year mandatory minimum,[2] and that she waived her right

---

[1] THE COURT: Do you remember signing that plea agreement, Ms. Montero?
THE DEFENDANT: Yes.
THE COURT: And did you sign that plea agreement after your attorney explained it to you and explained all the consequences of it to you?
THE DEFENDANT: Yes.
THE COURT: And did you sign that plea agreement voluntarily?
THE DEFENDANT: Yes.
THE COURT: Okay. Thank you.
ECF No. 19 at 9
[2] THE COURT: Now, Ms. Montero, I need to tell you about the maximum and, in this case, the minimum penalties that could be imposed and will be imposed at the time of sentencing. There is a mandatory minimum of five years of imprisonment. That means that the Court at the time of sentencing if you plead guilty will be required

to appeal. She acknowledged that the plea was not coerced, that she was fully informed about the consequences of her plea, and that she had determined that pleading guilty was in her personal best interest.

> THE COURT: Has anyone in any way, Ms. Montero, attempted to force you to plead guilty or threatened you in any way to get you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Has anyone made any promises or assurances to you other than what's contained in the plea agreement in order to get you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: So are you knowingly and voluntarily changing your plea to guilty now because you believe it's in your best interest to do so at this time?
>
> THE DEFENDANT: Yes.

*Id.* at 12-13.

Ms. Garcia-Montero also admitted as true the facts that the Government stated, including that she intentionally was involved in a conspiracy to distribute 100 grams or more of heroin.

> [THE GOVERNMENT] The United States would have demonstrated the following facts beyond a reasonable doubt: That from at least September 1st, 2016, up to and including April 17th, 2017, the Defendant knowingly and intentionally participated in a conspiracy in the states and districts of Rhode Island, Connecticut and Massachusetts with Juan Valdez, Claudio Valdez, Hector Valdez, with whom—I'm sorry, and Tanya Croteau to supply the Defendants' customers, who were

---

> to give at least five years of jail time if you plead guilty to this charge. Do you understand that?
> THE DEFENDANT: Yes.

*Id.* at 13.

themselves lower-level drug dealers, with heroin. She used a drug courier, Croteau, to deliver the heroin. The Defendant assisted her co-conspirators by, among other things, monitoring customer satisfaction with the heroin and reporting back to Juan Valdez which allowed him to adjust the strength of the product. The conspiracy of which the Defendant was part of involved 100 grams or more of heroin which was reasonably foreseeable to her.

\*\*\*\*\*

THE COURT: You also heard the facts that the Government would prove if this case were to go to trial. Do you admit the facts as stated by the Government as true?

THE DEFENDANT: Yes.

*Id.*

Mr. Garcia-Moreno then plead guilty[3] and the Court found her plea to be a fully

informed, knowing, and voluntary plea supported by sufficient facts.

THE COURT: The Court has heard from the Government the evidence it would present if this matter were to go to trial. The Court has questioned the Defendant regarding her understanding of the nature of these proceedings and the consequences of entering a plea of guilty to the charge. It is, therefore, the finding of this Court in the case of the United States versus Alexandra Garcia Montero that the Defendant is fully competent and capable of entering an informed plea, that the Defendant is aware of the nature of the charges and the consequences of the plea and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the charge; and, therefore, the plea is accepted, and the Defendant is now adjudged guilty of that offense.

---

[3] THE COURT: Before I ask you about your change of plea, do you have any questions for the Court, or do you want to confer with your attorney about any matter?
THE DEFENDANT: No, your Honor.
THE COURT: How do you now plead to the one-count Information brought against you by the Government, guilty or not guilty?
THE DEFENDANT: Guilty.

*Id.* at 21.

4

ECF No. 19 at 21–22.

Before sentencing, Ms. Garcia-Montero's attorney filed a Sentencing Memorandum. ECF No. 5.

At sentencing, Ms. Garcia-Moreno's attorney made a presentation to the Court highlighting mitigating factors from Ms. Garcia-Moreno's background and highlighting relevant 18 U.S.C. § 3553 factors.

The Court then sentenced Ms. Garcia-Moreno to 60 months of imprisonment. ECF No. 23.

Now, Ms. Garcia-Montero seeks to vacate her judgment of conviction because she alleges that her counsel was constitutionally ineffective. She alleges that her attorney did not: (1) show her the Pre-Sentence Report (PSR) (ECF No. 15 at 13); (2) file an appeal (*Id.* at 4); (3) object to the incorrect drug weight triggering a mandatory minimum sentence (*Id.* at 5); (4) request the "Fast-Track Program" (*Id.* at 6, 14); and (5) raise mitigating factors at sentencing. *Id.* at 8. The Government objected to Ms. Garcia-Montero's Motion. ECF No. 24.

## II.   APPLICABLE LAW

Section 2255 provides for post-conviction relief if a court sentenced a petitioner in violation of the Constitution or if the sentence is otherwise subject to collateral attack. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). In seeking to attack collaterally his sentence, the petitioner bears the burden of proving "exceptional circumstances" that call for redress under § 2255. *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Mack v.*

5

*United States*, 635 F.2d 20, 26-27 (1st Cir. 1980). For example, an error of law must be a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 428; *accord David*, 134 F.3d at 474.

The Sixth Amendment guarantees defendants the right to effective assistance of counsel. *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Even so, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991).

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must prove:

(1)     that his counsel's performance fell below an objective standard of reasonableness; and

(2)     a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Strickland*, 466 U.S. at 687-88, 694; *see also United States v. Manon*, 608 F.3d 126, 131 (1st Cir. 2010).

This same principle applies in the context of guilty pleas. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The *Lockhart* Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58; *see also Padilla v. Kentucky*, 559 U.S. 356, 371 n.12 (2010) ("In [*Lockhart*], the Court recognized—for the first time—that *Strickland* applies to advice respecting a guilty plea."). In the context of guilty pleas, the first prong of the

*Strickland* test is just a restatement of the standard of attorney competence described above. *Lockhart*, 474 U.S. at 58.

> The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Id.* at 59; *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). The *Lockhart* Court reiterated that, as said in *Strickland*, "these predictions of the outcome at a possible trial, where necessary, should be made objectively ...." 474 U.S. at 59-60; *see also Padilla*, 559 U.S. at 372 (noting, "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

Because the need for finality has "'special force with respect to convictions based on guilty pleas,'" a defendant may attack a guilty plea on collateral review only in "strictly limited" circumstances. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)). In particular, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Thus, when a defendant files a Section 2255 motion to challenge the validity of a conviction under a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989).

III.   ANALYSIS OF FACTS AND LAW

   A. *Failure to Provide the PSR*

Ms. Garcia-Moreno first alleges that her attorney "fail[ed] to allow [her] to review her pre-sentencing report and discovery." ECF No. 15 at 13. Yet the transcript of the Sentencing Hearing shows that this is not correct. Ms. Garcia-Moreno, at the beginning of the hearing, acknowledged that she had reviewed the PSR and that her attorney had answered all her questions about it. ECF No. 23 at 2.

> THE COURT: Have you had a chance to review the presentence report that the Probation Department issued in your case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did you discuss that with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did he answer any questions that you have about that report.
>
> THE DEFENDANT: Uh-huh. Yes.

*Id.*

As for providing the discovery, Ms. Garcia-Moreno said under oath that she was "fully satisfied with the counsel and representation" she received from her attorney. ECF No. 19 at 10-11.

> THE COURT: And have you fully discussed the Information and the consequences of that Information with your lawyer?
>
> THE DEFENDANT: Yes.

THE COURT: And has he answered all of your questions about that?

THE DEFENDANT: Yes.

THE COURT: And are you fully satisfied with the counsel and representation that you've received from Mr. Harris in this case?

THE DEFENDANT: Yes.

*Id.*

Discovery was unrestricted and extensive. The Court appointed discovery counsel to help all the Defendants' attorneys organize and review the material. The discovery process consumed a year or more. Ms. Garcia-Moreno's attorney received the material from the court appointed discovery counsel and reviewed the discovery to counsel her and make informed arguments to the court.

The evidence of Ms. Garcia-Moreno's guilt was tape-recorded. The Government had her on tape conspiring to commit the crime with Juan Valdez, who was an alleged leader of the drug trafficking organization. The evidence could have supported a much harsher sentence, but the Court sentenced her to the lowest sentence allowed by law.

Ms. Garcia-Moreno identified no discovery withheld from her by her attorney and identified no discovery that affected her sentence. Ms. Garcia-Montero did not ask to review personally the discovery. During the proceedings, Ms. Garcia-Moreno replaced court appointed counsel with privately retained counsel. She chose her own lawyer.

There is nothing here that supports Ms. Garcia-Montero's claims that she was not supplied discovery.

## B. Failure to Appeal

Ms. Garcia-Moreno claims her attorney was ineffective because he did not appeal. The problem with Ms. Garcia-Moreno's argument is that she has not said that she asked her attorney to appeal her guilty plea and sentence. More pointedly, she waived her right to appeal as part of her plea bargain agreement and acknowledged under oath that she had waived that right.

> THE COURT: Do you also understand as part of the plea agreement, you have waived any right to appeal the sentence I impose if the sentence I impose is within or below the guideline range? Do you understand that you've waived your right to appeal my sentence, the sentence that I impose on you, if those conditions are met?
>
> THE DEFENDANT: Yes.

*Id.*

Ms. Garcia-Montero has not pointed to any exception that would have allowed to her appeal considering the appellate waiver.

## C. Not Objecting to the Incorrect Drug Weight Triggering a Mandatory Minimum Sentence

Ms. Garcia-Moreno alleges that her attorney was ineffective for not objecting to what she calls an "incorrect drug weight" causing her to get a minimum mandatory term of imprisonment. ECF No. 15 at 5.

The grand jury originally charged Ms. Garcia-Moreno by Indictment in a conspiracy to distribute a kilogram or more of heroin. This charge carried with it a minimum mandatory sentence of 10 years. Ms. Garcia-Montero also had a prior drug

10

trafficking conviction that could have doubled her mandatory sentence to 20 years. The Plea Agreement that her attorney negotiated allowed her to escape that harsher minimum mandatory sentence in exchange for her plea of guilty to an Information that charged the lesser included offense.[4]

In exchange for a lesser charge, Ms. Garcia-Montero stipulated to the drug weight that controlled her sentence. The Plea Agreement provided:

> Defendant agrees that the heroin conspiracy in which she participated involved 100 grams or more of heroin which was reasonably foreseeable to her and the government could have proven that fact beyond a reasonable doubt.

ECF No. 2 at 5.

At Ms. Garcia-Montero's plea hearing, the Government said, "The conspiracy of which the defendant was part of involved 100 grams or more of heroin which was reasonably foreseeable to her." ECF No. 19 at 20. Ms. Garcia-Montero admitted this fact under oath at the hearing.

Because Ms. Garcia-Montero does not point out what was incorrect about the drug weight and does not address the fact that many times she admitted that her crime involved more than 100 grams of heroin, her claim of ineffective assistance of counsel on this ground is unsupported.

*D. Not Requesting the "Fast-Track Program"*

---

[4] The PSR assessed Ms. Garcia-Montero as an Offense Level 21, Criminal History Category II with a Sentencing Guideline range of 41–51 months. Yet it was not the guideline calculation that controlled her sentence. It was a statutory provision that required a five-year sentence because her case involved a conspiracy to distribute 100 grams or more of heroin.

Ms. Garcia-Moreno next alleges that her counsel was constitutionally ineffective because he did not tell her of the Department of Justice's Fast-Track Program (also known as the Early Disposition Program). ECF No. 15 at 14. The program to which Ms. Garcia-Moreno points does not apply to her case. The Department of Justice Fast-Track Program applies to cases involving a charge of illegal reentry under 8 U.S.C. § 1326. Because the Government did not charge Ms. Garcia-Moreno with illegal reentry, the Department of Justice program has no application. As a result, her attorney's failure to tell her of the program cannot be a basis for a claim of ineffective assistance of counsel.

### E. Did Not Raise Mitigating Factors at Sentencing

Again, the problem with Ms. Garcia-Moreno's argument that her attorney did not raise mitigating factors at sentencing is two-fold. First, she was subject to a mandatory minimum sentence of five years of imprisonment, which she received. Second, her assertion is not correct. Her attorney set forth an extensive and thorough mitigation argument highlighting Ms. Garcia-Moreno's background, involvement in this incident, and her desire for rehabilitation. He appropriately focused on the 3553 factors.

> MR. HARRIS: Thank you, your Honor. A couple points, your Honor. I reviewed the presentence report. It's a very extensive report. It lays out I think some important points, some of which or many of which were highlighted by my brother regarding her involvement, her role in this offense.
>
> I think there are mitigating factors, also, for purposes of sentencing where—and Ms. Garcia is also aware she's looking at a minimum mandatory sentence of five years. That's what the plea agreement states. That's what she agreed to subject to this Court's

determination of what would be an appropriate sentence. The mitigating factors, as my brother indicated, there were no drugs seized in her home, that there were no drugs seized from her. She was not involved in any of the controlled buys. This is all reflected in the presentence report as well.

The evidence was—for the most part appeared to be circumstantial based on wiretap information, nor was she ever heard discussing kilogram amounts of drugs in any of the monitored conversations.

And as the presentence report reflects and indicates, she seemingly had a more limited involvement in the conspiracy, even though she was intimately involved with Mr. Juan Valdez.

Her personal background information is rather sad as I looked at it, your Honor. She got married at the age of 15 in her country. She had one child born of that marriage, a daughter.

Apparently, at least in terms of what's reflected in the presentence report, while she was married to that individual in the Dominican Republic, apparently she was—so she represented to probation, she was physically abused as well as the daughter from that relationship. It's my understanding that she divorced that gentleman that she was married to at the age of 17. The child born of that marriage now went on to go to college.

At the age of 18, she met another gentleman, I believe in her country, the Dominican Republic, married that individual. Another child was born out of that relationship. The child's name is Casandra, who is present in court. That's her daughter that's present in court. She's 21, 21 years old. The father, according to the presentence report, died in a motor vehicle accident.

There was a subsequent relationship with another gentleman. A child was born. His name was Danny. That child is a college student as well, as I understand it, in the Dominican Republic.

And lastly, her current or her relationship with the Co-Defendant, Mr. Valdez, as documented by the presentence report reflects that apparently it hasn't been a long-term relationship. I guess based on what's reflected in the presentence report, I think it started in the year 2012.

By way of her education, she attended school until she was only 13 years old. It's a sixth grade education in her country.

She's worked at a beauty salon by way of her prior employment, barber shop. She's worked as a housekeeper, a sewing machine operator. As the Court knows based on the presentence report, she has no assets. Nothing. She doesn't own anything. She doesn't have anything. She lacks legal standing in this country to engage in any meaningful or lawful employment, as the Court knows as well; and with that, I'm suggesting she doesn't have the financial ability to pay a fine here.

The minimum term calculated is five years, and the maximum is 40. The Government is asking the Court to impose a sentence of five years.

The presentence report, as the Court has indicated, has correctly calculated the guideline range as 41 to 51 months. She understands that because of the charge that she pled to, 100 grams of heroin, it carries the minimum mandatory of five years. She's otherwise not eligible for safety valve based on her prior criminal history here. All that's been explained to her.

Lastly, she's sorry. She's truly remorseful for violating our federal laws. I've spoken to her in detail about this. She's asking for leniency here in the imposition of sentence and the imposition of the related fines. The Probation Department has not identified any factors that would warrant any kind of departure here.

And lastly, Judge, and I've spoken to her and I've spoken to her family, I've looked at various programs that might—she may benefit from in the future looking forward. They may help her with the rehabilitative aspect of this situation when she does get out and she is reintegrated in the community. Wherever that community may be, hopefully that will help her.

I'm asking that the Court consider recommending her to the Danbury—FCI Danbury in Danbury, Connecticut. There's a particular program there called the FIT program; that I've done some research, I've assisted another client who was successfully placed into that program. It has various components. I think it's a gender-based program, also, that would help her in terms of any trauma she may have experienced; if there are drug abuse or drug use issues, it would help her to that extent; and it has other components as well. I would ask that the Court

recommend that she be placed at that facility and, if she's otherwise eligible, to consider her to be enrolled into the FIT program. Thank you, your Honor.

THE COURT: Thanks, Mr. Harris.

ECF No. 23 at 8-12.

## IV.    CONCLUSION

Alexandra Garcia Montero has failed to show any reason this Court should

vacate her sentence and so the Court DENIES Ms. Garcia-Montero's Motion to Vacate

under 28 U.S.C. § 2255.  ECF No. 15.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

March 7, 2019